IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ANDREA JAYE MOSBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-02099-SHM-tmp |
| | ) | |
| REAVES LAW FIRM PLLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Andrea Jaye Mosby sues Defendant Reaves Law Firm PLLC ("the Firm") for retaliation in violation of Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act, and the Equal Pay Act.

Before the Court is Defendant's Motion for Summary Judgment. (ECF No. 33.) For the reasons that follow, Defendant's Motion is **DENIED.**

## I.    Background

Plaintiff filed her Complaint against Defendant on February 24, 2023. (ECF No. 1.) Plaintiff filed her Amended Complaint the same day. (ECF No. 8.) Defendant filed a partial Motion to Dismiss on May 8, 2023. (ECF No. 11.) The Court denied Defendant's Motion to Dismiss on August 11, 2023. (ECF No. 18.)

Discovery in this case closed on October 2, 2024. (See ECF No. 32.) Defendant filed its Motion for Summary Judgment on November 4, 2024. (ECF No. 33.) Plaintiff filed her Response in Opposition on December 9, 2024. (ECF No. 34.) Defendant filed a Reply on December 23, 2024. (ECF Nos. 35, 36.) On January 17, 2025, the Court granted the Parties' Motion to Continue the Trial, which is now set for May 5, 2025. (ECF Nos. 37-39.)

Plaintiff is a lawyer with 27 years' experience in labor and employment law. (ECF No. 34-1 at 2.)[1] Defendant is a personal injury law firm in Memphis, Tennessee. (Id. at 1.) Defendant hired Plaintiff to serve as Chief People Officer ("CPO") for the Firm in May 2022. (Id.) Before joining the Firm, Plaintiff worked at Memphis Light, Gas, and Water ("MLGW") for 18 years. (ECF No. 36 at 1.) At MLGW, Plaintiff was the labor and employment in-house counsel before serving as the Labor Engagement, Diversity, and Inclusion Manager in the human resources ("HR") department from 2018 to 2022. (Id.)

Plaintiff learned of the CPO position from a prior coworker, who had spoken to Henry Reaves about Plaintiff. (ECF No. 36 at 2.) Henry Reaves is the founding attorney and Chief Executive Officer ("CEO") of the Firm, and his wife, Neva Reaves, is the Chief Experience Officer of the Firm. (ECF No. 36 at 11.)

---

[1] All citations to the Parties' Statements of Material Facts (ECF Nos. 34-1 and 36) are inclusive of the Parties' internal citations to record evidence.

Henry Reaves was "looking for...someone who could be a kind of visionary and kind of help build [HR] out and take it to the next level...designing and installing the right process and procedures for HR for [the Firm] to flourish." (Id.) Plaintiff and Reaves spoke on the phone and had an interview in his office. (Id.) Reaves offered Plaintiff the job. (Id.) Plaintiff was to "do everything related to the people" who worked at the Firm, with "more of an emphasis on culture," and essentially "work as a buffer between [Reaves] and the employees." (Id. at 2-3.)

Cumulatively, as CPO, "Plaintiff was responsible for building an HR infrastructure, managing all HR and employment-related matters, recruiting and interviewing prospective employees, the hiring and firing of employees, and handling all employee-related matters.... Plaintiff was also responsible for ensuring compliance with all state and federal laws as they related to employees." (ECF No. 34-1 at 3.) That included "ensuring that Defendant was in compliance with the laws that govern employee compensation" and receiving "complaints regarding wages." (ECF No. 34-1 at 3.)

While working as CPO, Plaintiff sat in on an interview for an attorney candidate with Sheena Payne and Mark Shirmer. (ECF No. 36 at 3.) After Plaintiff, Payne, and Shirmer had interviewed the candidate, they took him upstairs to Henry Reaves' office. (Id. at 3.) Plaintiff asked the candidate about his salary

expectations, and Reaves interjected, saying, "let's just cut to the chase, I want you and we are willing to bring you in at 85,000." (Id. at 4.) Plaintiff walked the candidate out, and then met with Payne. (Id.) Plaintiff testified that Payne asked her, "why would he offer him 85,000 when I have a young lady that is making 65,000 that reports to me."[2] (Id.) Plaintiff requested an explanation and additional facts, and Payne "explained that she had a young, female third-year associate that moved from Atlanta to work for the Firm and was making $65,000." (Id.)

After hearing Payne, Plaintiff "went to talk to Reaves and explained that how he acted in the interview was unprofessional and started to question why he offered the male candidate $85,000." (Id.) Reaves responded that it was what the candidate "deserves," and that the candidate was moving to Memphis. (Id. at 4.) Plaintiff said that there was a female attorney at the Firm making $65,000. (Id. at 4-5.) Reaves allegedly responded, "I don't care," said that the male candidate had more experience

---

[2] Defendant objects to the Court's consideration of Payne's alleged statement, arguing that this evidence is inadmissible hearsay under Federal Rule of Evidence ("FRE") 802. (ECF No. 36 at 4.) However, when Payne allegedly made her statement, she was an employee of Defendant making a statement about her management of a Firm employee. Payne is currently the Firm's COO and was formerly a managing attorney. (ECF No. 33-6 at 3.) The statement may also be offered, not for its truth, but as evidence, true or not, about whether Plaintiff had a reasonable basis to believe there was a Title VII or EPA violation to report. Payne's statement is not hearsay, but an opposing party statement pursuant to FRE 801(d)(2), or a statement not offered for its truth under FRE 801 (c)(2). The Court will consider Payne's alleged statement at this stage.

and was relocating, and asked Plaintiff "who she had been talking to and stated that she was not being loyal to him." (Id. at 5.)

Plaintiff and Reaves "went to Mr. Cummins's office, where Mr. Reaves continued to state that [Plaintiff] was 'disloyal,' and that she was not 'looking out for the Firm.'" (Id.) Reaves allegedly said, "How dare [Plaintiff] tell [Reaves] what he can't bring people in at...and how [Plaintiff is] always telling him what he can't do. That's not [Plaintiff's] job to tell him what he can't do. [Plaintiff is] supposed to be supporting him." (Id.)

Plaintiff then raised a second issue with Reaves, telling him that he was not paying his executive assistant, PaQuita Redmond, "what she is supposed to be making" and "questioned whether she was classified correctly under the FLSA." (Id. at 6.) Plaintiff alleges that Redmond had voiced her concerns to Plaintiff, saying that Redmond was "getting calls all time of night."[3] (Id. at 9.) Reaves then allegedly told Plaintiff: "[Y]ou're disloyal. You're just trying to set me up for a

---

[3] Defendant also objects to the Court's consideration of Redmond's alleged statement, arguing that this evidence is inadmissible hearsay under FRE 802. (ECF No. 36 at 9.) Redmond is an employee of the Firm who was speaking about her employment with the Firm to the Firm's CPO. Her statement may be admissible as an opposing party statement. Her statement would also not be hearsay if it were not offered for the truth of the matter asserted. To support Plaintiff's claim, it would not matter whether Redmond's statement were true and whether she was indeed misclassified under FLSA. The probative value of Redmond's statement is whether, true or not, it formed a basis for Plaintiff to reasonably believe there was a FLSA violation to report. Redmond's statement is admissible as an opposing party statement pursuant to FRE 801(d)(2), or as a statement not offered for its truth under FRE 801 (c)(2). The Court will consider Redmond's alleged statement at this stage.

lawsuit. That's what you do. You sue people...You're disloyal to me. You don't have my best interest at heart." (Id.) Reaves and the Firm dispute the accuracy of Plaintiff's recollection of her conversations with Reaves about the two pay issues. (See id. at 4-7; ECF No. 34-1.) Reaves testified that he did not recall the exact language or the context in which he called Plaintiff disloyal. (Id. ECF No. 36 at 6-7.) He does admit that he told her he "questioned her loyalty," but was unsure whether he "used the term trust or loyal." (Id.)

"Shortly thereafter," within the first 30 days of her employment, Reaves told Plaintiff that she "obviously didn't understand how the firm operates," was demoted to intake specialist, and would begin a rotation plan to learn how the Firm operated. (Id. at 7; ECF No. 34-1 at 5.) Plaintiff's salary was unaffected by this change. (ECF No. 34-1 at 6-7.) She understood "that it was a temporary plan to work one month in each of the divisions" and that she "would be assessed upon completion." (Id.) Plaintiff agreed to participate in the rotation plan, but believed that Reaves' plan was "not the most logical way," and that "there were other ways that [Plaintiff] could have learned" about the Firm's operations. (Id. at 7-8.) Plaintiff's testimony is that she told Henry Reaves that she felt her demotion was "payback" for raising the employee pay

6

issues, and that "neither Dwan nor Ted," other executives at the
Firm, "had to work in the intake department." (ECF No. 36 at 8.)

Before starting the rotation plan, Plaintiff had spent time
building rapport with employees, recruiting numerous new
employees based on Reaves' requests, moving furniture, picking
out paint colors, "working with Emily on things that I needed to
know," attending many meetings, and hiring Plaintiff's mother to
work as a recruiter at the Firm. (ECF No. 34-1 at 4, 7.)

After Reaves removed Plaintiff from her position as CPO,
Plaintiff's testimony is that Henry Reaves informed employees
not to talk to Plaintiff about "anything related to HR" now that
she was the intake clerk. (ECF No. 36 at 7.) On or around May
28, 2022, Reaves "instructed Plaintiff to prepare a transition
document outlining all of the current projects and tasks
Plaintiff completed or was working on in her role as CPO." (ECF
No. 34-1 at 8; ECF No. 36 at 10-11.) Although Reaves sent an
email to the other members of the executive team on May 31, 2022,
that the deadline for the document was June 2, 2022, he never
communicated a deadline for the document to Plaintiff in writing.
(ECF No. 36 at 10-11.)

Plaintiff maintains that, in addition to failing to provide
any written notice of the deadline for the transition document,
Reaves never communicated a deadline verbally. (Id. at 8.)

7

Plaintiff's testimony is that Reaves' only instruction was that "at some point I need to know what your open matters are." (Id.)

Henry Reaves' testimony is that "I didn't give [Plaintiff] a specific date. I told her, you know – it was I guess implied we thought [the deadline] was like immediately, you know." (ECF No. 36 at 10.) Neva Reaves' testimony is that she "believe[s] [Henry Reaves and Plaintiff] spoke about when she was supposed to give the transition document." (Id.)

Plaintiff was directed to report to the intake department for her rotational program on Saturday, May 28, 2022. (ECF No. 34-1 8.) However, Plaintiff's grandmother, who lived with Plaintiff, passed away on May 20, 2022. (ECF No. 36 at 11.) Plaintiff's testimony is that she notified Henry Reaves and other personnel of her circumstances and that they were aware that Plaintiff was on bereavement leave during this time. (Id. at 12.) Plaintiff's grandmother's funeral services were held on Friday, May 27, 2022. (Id.) Plaintiff returned to work on Tuesday, May 31, 2022. (Id.) On her return, Plaintiff reported to the intake department, watched the department's training videos, and continued to report to that department until her termination. (Id. at 12-13.) Defendant disputes that Plaintiff ever reported to intake. (ECF No 34-1 at 8.)

on June 2, 2022, Plaintiff's testimony is that Henry Reaves told Plaintiff and Tina Adams, the Firm's Senior Manager of

Client Experience, that Plaintiff "would not need to stay in the intake department for 4 weeks as initially anticipated and that she would move to the 'next phase' on June 3." (ECF No. 36 at 13; 33-6 at 2-3.)

Later that afternoon, Neva Reaves sent an email to Plaintiff terminating her employment. (ECF No. 34-4 at 6.) The termination email alleges that Plaintiff's failure to timely submit the transition document was an "act of insubordination." (ECF No. 34-4 at 6.) The email references a June 2 deadline for completion of the transition document contained in a May 31 email sent by Henry Reaves——an email that Defendant admits Plaintiff never received. (See id.; ECF No. 36 at 10-11.) The termination email lists this "act of insubordination in addition to other missteps and unprofessional behavior [as] an indication that it is best for [the Firm and Plaintiff] to part ways." (ECF No. 34-4 at 6.)

Plaintiff admits that the transition document was never completed, but that was only because she was terminated before she could do so and because she did not know there was a June 2 deadline for the document. (ECF No. 34-1 at 8.) Regardless of the alleged failure to timely submit the transition document, Neva Reaves' testimony is that, if Plaintiff had only reported to intake, she would still be employed by the Firm. (ECF No. 36 at 13.)

After her termination, Plaintiff and Henry Reaves exchanged emails. (ECF No. 34-1 at 10.) Plaintiff attempted to challenge her termination, alleging that Defendant had failed to follow its own progressive discipline policy. (Id.) Although Plaintiff admits that the content of some of those emails was "unprofessional," she argues the post-termination emails are irrelevant. (Id.)

Plaintiff alleges that she was fired in retaliation for reporting what she reasonably believed to be violations of federal employment law. Specifically, the conversation in which she raised the issue of pay disparity between the male and female attorneys and the FLSA classification of Reaves' assistant. Plaintiff's testimony is that she made these reports to Reaves at least in part on the employees' behalf, knowing it was adverse to the Firm's interest. Defendant argues that Plaintiff was fired for a legitimate, non-retaliatory reason: poor performance and insubordination. Plaintiff argues that Defendant's reason is a pretext for retaliation.

## II. Jurisdiction

Plaintiff has asserted claims arising under federal law, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a), the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the Equal Pay Act

("EPA"), 29 U.S.C. § 206, which amended the FLSA. (ECF No. 8.) The Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

**III. Standard of Review**

Summary judgment is granted if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of her case. Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018). A fact not admitted or stipulated may not be "genuinely disputed" if the opposing party objects that it cannot be presented or supported "in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c).

There is a dispute about a material fact if the evidence is such that a reasonable jury could return a verdict for the nonmovant. EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc). Inferences must be drawn in the light most favorable to the nonmovant. Bledsoe v. Tenn. Valley Auth. Bd. of Dirs., 42 F.4th 568, 578 (6th Cir. 2022). The Court "is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and

search the entire record for some specific facts that might
support the nonmoving party's claim." InterRoyal Corp. v.
Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).

Although summary judgment must be used carefully, it "is
'an integral part of the Federal Rules as a whole, which are
designed to secure the just, speedy, and inexpensive
determination of every action' rather than a 'disfavored
procedural shortcut.'" F.D.I.C. v. Jeff Miller Stables, 573 F.3d
289, 294 (6th Cir. 2009) (quoting Celotex Corp. v. Catrett, 477
U.S. 317, 327 (1986)).

## IV. Law

### A. Title VII Retaliation

Federal law prohibits employers from retaliating against
employees for filing complaints of discrimination under Title
VII. Claims asserting retaliation based on circumstantial
evidence are analyzed under the McDonnell Douglas burden-
shifting framework. See Briggs v. Univ. of Cincinnati, 11 F.4th
498, 514 (6th Cir. 2021); Imwalle v. Reliance Med. Prods., Inc.,
515 F.3d 531, 543–44 (6th Cir. 2008); Adair v. Charter Cnty. of
Wayne, 452 F.3d 482, 489 (6th Cir. 2006).

To establish a prima facie case of retaliation under Title
VII, a plaintiff must establish that: (1) she "engaged in a
protected activity"; (2) her "exercise of such protected activity

12

was known by the defendant"; (3) the defendant subsequently "took an action that was 'materially adverse' to the plaintiff"; and (4) "a causal connection existed between the protected activity and the materially adverse action." Briggs, 11 F.4th at 514 (quoting Rogers v. Henry Ford Health Sys., 897 F.3d 763, 775 (6th Cir. 2018)).

An employee engages in protected activity when she "has opposed any practice made an unlawful employment practice" by Title VII. § 2000e-3(a). In defining Title VII's "opposition clause," the Supreme Court quoted the federal government's amicus brief and an EEOC manual: "'When an employee communicates to her employer a belief that the employer has engaged in...a form of employment discrimination, that communication' virtually always 'constitutes the employee's *opposition* to the activity.'" Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 276 (2009). Recognizing a broad definition of opposition, the Supreme Court held that opposition does *not* "demand[] active, consistent 'opposing' activities to warrant...protection against retaliation," although those activities would also fall under the umbrella of opposition. Id. at 277 (quoting and overruling the opinion of the lower court).

Protected activity does not require a "complaint be lodged with absolute formality, clarity, or precision." Yazdian v. ConMed Endoscopic Techs., Inc., 793 F.3d 634, 645 (6th Cir. 2015)

13

(quoting Stevens v. Saint Elizabeth Med. Ctr., Inc., 533 F. App'x 624, 631 (6th Cir. 2013)). However, the opposition must be more than "merely a 'vague charge of discrimination.'" Id. (quoting Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1313 (6th Cir. 1989)). The employee's complaint must also "be based on 'a reasonable and good faith belief that the opposed practices were unlawful.'" Id. at 646 (quoting Johnson v. Univ. of Cincinnati, 215 F.3d 561, 579 (6th Cir. 2000)). The employee must both subjectively believe the conduct was unlawful, and "'a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee' would believe that the conduct complained of was unlawful." Id. at 646 (quoting Rhinehimer v. U.S. Bancorp Invs., Inc., 787 F.3d 797, 811 (6th Cir. 2015)).

Because this inquiry is "necessarily fact-dependent" and depends on "the totality of the circumstances known (or reasonably albeit mistakenly perceived) by the employee," objective reasonableness "should be decided as a matter of law only when no reasonable person could have believed that the facts known to the employee amounted to a violation or otherwise justified the employee's belief that illegal conduct was occurring." Id. at 646-47 (quoting Rhinehimer, 787 F.3d at 811).

When a plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, non-retaliatory

14

reason for the adverse employment action. Briggs, 11 F.4th at 515. Once the employer has provided a legitimate, non-retaliatory reason, the burden shifts to the plaintiff to show that the defendant's reason is "actually a pretext to hide unlawful retaliation." Id. (quoting Rogers, 897 F.3d at 777). At summary judgment, a plaintiff meets this burden when she "produce[s] evidence sufficient that a reasonable finder of fact could reject the employer's proffered reason." Id. (quoting Rogers, 897 F.3d at 777).

**B.  FLSA and EPA Retaliation**

The FLSA, as amended by the EPA, prohibits employers from retaliating against employees for lodging complaints about FLSA wage classification or gender-based unequal pay for equal work. The McDonnell Douglas burden shifting analysis also applies to FLSA and EPA retaliation claims. Adair, 452 F.3d at 489.

To establish a prima facie case of retaliation under the FLSA, an employee must show that: 1) she engaged in protected activity under the FLSA; 2) her exercise of that right was known by her employer; 3) the employer took an adverse action against the employee after the protected activity occurred; and 4) there was a causal connection between the protected activity and the adverse action. Id.

An employee has engaged in protected activity if she "filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215.

Under FLSA retaliation law, there is a legally cognizable distinction between the performance of job duties and the assertion of one's own FLSA rights or the rights of others. Pettit v. Steppingstone, Ctr. for the Potentially Gifted, 429 F. App'x 524, 530 (6th Cir. 2011). An employee carrying out human resources duties acts in the interest of the employer. Id. at 531. The assertion of FLSA rights, on behalf of oneself or another employee, is adverse to the employer. Id. "In recognition of this fact, courts generally require that an employee with these duties somehow step outside the role or otherwise make clear to the employer that [she] was taking a position adverse to the employer in order for the employee's activity to be protected under 29 U.S.C. § 215(a)(3)". McKinnon v. L-3 Commc'ns Corp., 814 F. App'x 35, 43 (6th Cir. 2020) (internal quotations omitted).

Once the plaintiff has satisfied her prima facie case, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the termination. See Adair, 452 F.3d at 482. Once the defendant provides such a reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence

that the defendant's reasons were a pretext for unlawful retaliation. See id.

## V. Analysis

The Court draws all reasonable inferences in the light most favorable to Plaintiff. See Bledsoe, 42 F.4th at 578.

Defendant repeatedly disputes portions of Plaintiff's Statement of Undisputed Material Facts, not by specifically objecting on the basis of the Federal Rules of Evidence or contrary record evidence, but by categorizing Plaintiff's sworn declaration and deposition testimony as "unsubstantiated, self-serving assertions" insufficient "to defeat summary judgment," citing Mosquera v. MTI Retreading Co., 745 F. App'x 568, 573 (6th Cir. 2018). (See ECF Nos. 35, 36.) The case law Defendant cites does not support its broad assertion.

The explanatory parentheticals in the cases cited by the Sixth Circuit in Mosquera make clear the type of assertions that the court considers unsubstantiated and self-serving: "statements made on information and belief;" "conclusory allegations, speculation and unsubstantiated assertions;" and "'self-serving' testimony, when viewed in light of [the same individual's] sworn statements to the contrary." See id. In Mosquera, the court decided that the plaintiff's "best guess" (that he met one non-dispositive factor in a test that determined

whether he met one of the required elements of his claim) did not raise a genuine issue of material fact when that "best guess" was unsubstantiated and multiple other pieces of persuasive evidence contradicted his guess. See id. at 573-74.

Here, the Court's consideration of Plaintiff's sworn declaration and deposition testimony does not rely on a wholly unsubstantiated "best guess." See id. The parties disagree about the exact content and context of actions taken and statements made by the relevant individuals. Although the asserted conversations are not substantiated by evidence such as audio recordings, they are not wholly unsubstantiated by the record, alleged on information and belief, contradicted by a party's own sworn statement, or based on a "best guess." See id.

### A.    Title VII Retaliation Claim

Defendant makes two primary arguments in support of summary judgment: (1) Plaintiff's claim of protected activity fails at the reasonable and good faith belief inquiry, and (2) Defendant had a legitimate, non-retaliatory reason for termination that Plaintiff cannot establish is pretextual. (ECF No. 33-1 at 3-8.) Defendant does not appear to contest that Plaintiff could satisfy the other elements of her prima facie case, should she be found to have engaged in protected activity. (Id.)

### 1.    Protected Activity

Protected activity under Title VII turns, in this case, on whether Plaintiff had an objectively reasonable and subjectively good faith belief that Defendant was violating Title VII by underpaying a female attorney. See Yazdian, 533 F. App'x at 645-46.

Defendant argues that Plaintiff did not have a "reasonable and good faith belief that the opposed practices were unlawful because she did not even have firsthand knowledge of the underlying facts nor did she investigate the complaint." (ECF No. 33-1 at 6.) That argument is contradicted by the record. Although Plaintiff did not view a paystub for the employee or some other physical record, she relied on the statement of the underpaid employee's supervisor, Sheena Payne.[4] Plaintiff's reliance on the statement of the employee's supervisor, someone Plaintiff reasonably trusted to know the employee's salary, is not unreasonable as a matter of law. See Yazdian, 793 F.3d at 646-47 (objective reasonableness "should be decided as a matter

---

[4] Defendant argues that any conversation between Plaintiff and Payne cannot be considered by the Court because any of Payne's statements would be inadmissible hearsay. As analyzed above, Payne's statements may be admitted if offered for a purpose other than the truth of the matter asserted. Fed. R. Evid. 801. Here, so long as a reasonable jury could find that Plaintiff reasonably relied on Payne's statements about the employee's salary and circumstances, and reasonably believed Defendant's practices were unlawful, it would not matter whether Payne's assertions about the employee were true. Employees are protected from retaliation for reports of unlawful conduct, even if that conduct turns out to be lawful, so long as the employee had a reasonable and good faith belief that the conduct was unlawful when the employee made the report. See Johnson, 215 F.3d at 579-80.

of law only when no reasonable person could have believed that the facts known to the employee amounted to a violation").

Plaintiff's conversation with the supervisor could be reasonably construed as investigative. Plaintiff learned that the female attorney had more experience than the male candidate, that she also had to relocate to Memphis, but was being paid $20,000 less than the new male attorney's offer. (ECF No. 34-1 at 3-4.) Plaintiff had been a labor and employment attorney for 27 years and believed that Defendant's practice was unlawful based on the information Plaintiff received. (See ECF No. 33-1 at 6.) A reasonable jury could find that the depth of Plaintiff's experience makes her good faith belief that the law was being violated more probable, not less. Plaintiff could have performed a more in-depth investigation, but in these circumstances did not find it necessary before raising her complaint. Title VII does not require a lengthy and formal inquiry. Plaintiff's complaint need not have been "lodged with absolute formality, clarity, or precision." Yazdian, 793 F.3d at 645 (quoting Stevens, 533 F. App'x at 631).

Defendant cites Plaintiff's testimony that, "[a]t that time I didn't know what the employees were making," to argue that it would be "impossible" for her to have reasonably believed there was unlawful conduct. (ECF No. 33-1 at 6-7.) However, Plaintiff maintains that the "[a]t that time" in her statement refers to

the time Plaintiff began the investigative conversation with the
supervisor. (See ECF No. 34-1 at 6.) By the end of that
conversation, before Plaintiff asserts she made her complaint
opposing an unlawful practice, Plaintiff had gained knowledge of
the salary discrepancy from the female attorney's supervisor.
(See id.)

A reasonable jury could find that Plaintiff engaged in
protected activity. The burden shifts to Defendant to proffer a
legitimate, non-retaliatory reason for Plaintiff's termination.

### 2. Pretext

Defendant asserts a legitimate, non-retaliatory reason for
Plaintiff's termination: "her blatant refusal to perform job
duties." (ECF No. 33-1 at 7.) Specifically, Defendant alleges
that Plaintiff "failed to timely submit the transition document"
and failed to "report to intake after she was instructed," which
Defendant alleges were acts of "insubordination." (Id.) Because
Defendant has asserted a legitimate, non-retaliatory reason for
Plaintiff's termination, the burden rests with Plaintiff to show
that a reasonable jury could find that Defendant's reason was
pretextual. See Briggs, 11 F.4th at 515.

Plaintiff offers potential evidence that contradicts both
acts of alleged insubordination. (See ECF No. 34 at 13-14.)
Responding to her alleged failure to timely submit the transition
document, Plaintiff produces deposition testimony from which a

reasonable jury could find that Henry Reeves himself admits that no specific deadline for that document was ever communicated to Plaintiff.[5] (See ECF No. 36 at 10.) Neva Reaves confirmed in her deposition testimony that the alleged failure to timely submit the transition document alone was not the ultimate reason for Plaintiff's termination. Defendant does not dispute that "Mrs. Reaves confirmed that if Plaintiff had just reported to intake, she would still be employed." (ECF No. 36 at 13.)

These are sufficient facts from which a reasonable jury could infer Defendant's first proffered non-retaliatory reason is pretextual. A reasonable jury, finding the first proffered reason pretextual, might also reasonably find the totality of Defendant's reason was pretextual. Nevertheless, Plaintiff supports her argument that the second proffered reason is pretextual with additional facts.

Responding to her alleged failure to report to intake, Plaintiff testified that she was on bereavement leave on her initial report date and that she did in fact report to intake on her return on May 31, 2022. (ECF No. 36 at 11.) Plaintiff testified that she began by watching the intake training videos and reported to intake for three days before she was fired. (Id.

---

[5] Henry Reaves testified, referring to the deadline for the transition memorandum, "I didn't give a specific date. I told her, you know——it was I guess implied we thought [the deadline] was like immediately, you know." (ECF No. 34-5, PageID 331 at 30:1-5.)

at 12-13.) Although Henry and Neva Reaves' testimony may contradict Plaintiff's, a reasonable jury could credit Plaintiff's testimony and find that Defendant's second alleged act of insubordination was pretextual.

Ultimately, the parties' arguments turn on the issue of credibility. Defendant offers plausible legitimate reasons for termination. Plaintiff offers plausible evidence that those reasons are pretextual. Deciding which set of facts is more credible is a question that can only be resolved by a jury.

Because Defendant has failed to show that no reasonable jury could find for Plaintiff, Defendant's Motion for Summary Judgment on Plaintiff's Title VII retaliation claim is **DENIED.** See EEOC v. Ford Motor Co., 782 F.3d at 760.

### B.    FLSA and EPA Retaliation Claims

Defendant contends that it is entitled to summary judgment on Plaintiff's FLSA and EPA retaliation claims for two reasons: (1) Plaintiff's actions while serving as CPO do not qualify as FLSA or EPA protected activity; and (2) Defendant had a legitimate, non-retaliatory reason for termination that Plaintiff cannot establish is pretextual. (ECF No. 33-1 at 10-14.) Defendant does not appear to contest that Plaintiff could meet the other elements of the prima facie case, should she be found to have engaged in protected activity. (Id.)

23

### 1.    Protected Activity

The standard for protected activity in FLSA and EPA claims differs from that of Title VII. See Pettit, 429 F. App'x at 530. At issue here is whether Plaintiff "step[ped] outside [her] role" as the Firm's CPO in her conversations with Henry Reaves about the alleged gender disparity in attorney salaries and the FLSA classification of Reaves' assistant. See McKinnon, 814 F. App'x at 43. That question turns on whether Plaintiff was carrying out her HR duties in the interest of the Firm, or "taking a position adverse" to the Firm and asserting the FLSA rights of the female attorney and Reaves' assistant, Redmond. See id.; Pettit, 429 F. App'x at 530.

For purposes of summary judgment, it is undisputed that Plaintiff, as CPO, was at least partially responsible for "ensuring that Defendant was in compliance with the laws that govern employee compensation" and receiving "complaints regarding wages." (ECF No. 34-1 at 3.) As an employee with HR obligations, she is subject to the heightened standard for FLSA protected activity. See McKinnon, 814 F. App'x at 43.

A reasonable jury might infer both from Plaintiff's words and tone, and from Henry Reaves' reaction, that Plaintiff's complaint was outside her role and adverse to the Firm's interests. Reaves, acting as CEO, responded to the allegations of FLSA and EPA violations by questioning Plaintiff's loyalty to

24

the Firm and, as Plaintiff argues, removing her from her position for her assertions. (ECF No. 36 at 6-7.) Plaintiff's testimony is that she raised these issues with the "intention...to makes sure that...whatever [the employee] was entitled to under the law that she received it." (ECF No. 36 at 9.)

Defendant's position, that Plaintiff was expected to make these notifications as part of her job duties, may reasonably be seen to be contradicted by Reaves' response. If Plaintiff's duty as CPO were to warn leadership about these issues, why would Plaintiff's notification spark an outraged reaction? If Plaintiff were not "step[ping] outside [her] role" and raising a complaint adverse to the Firm's interests, why would Reaves accuse her of not "looking out for" the Firm? See id. (ECF No. 34-1 at 5.) If Plaintiff were supposed to ensure Defendant was compliant with the FLSA and EPA, why would Reaves say that it was not Plaintiff's job "to tell him what he can't do" about employee pay issues? (Id.)

Most probative, however, is the following statement Plaintiff testifies that Reaves made: "you're disloyal. You're just trying to set me up for a lawsuit. That's what you do. You sue people.... You don't have my best interest at heart." (ECF No. 34-2 at 13.) There is sufficient evidence from which a reasonable jury could find that, when Plaintiff engaged in the alleged protected activity, Defendant's CEO believed that

25

Plaintiff was acting adversely to the interest of the Firm, was setting the Firm up for a FLSA lawsuit, and was engaging in activity that was not part of her job. See id. (See id.) If the jury credits Plaintiff's testimony, portions of which are supported by other record evidence, it could reasonably find that Plaintiff engaged in protected activity although she was the Firm's CPO. See id. (See id.)

Defendant cites multiple out-of-circuit cases to support its argument that Plaintiff did not engage in protected activity as CPO. Here, unlike Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 102-3 (1st Cir. 2004), there is evidence that Plaintiff was *not* acting to "avoid potential liability of" her employer. Here, unlike Lasater v. Texas A&M University Commerce, 495 F. App'x 458, 462 (5th Cir. 2012), Plaintiff was not referring to potential compliance issues during a routine audit. Unlike Aflalo v. Cantor Fitzgerald, L.P., 298 F. Supp. 3d 688, 696 (S.D.N.Y. 2018), Plaintiff was not asked by senior-level employees to conduct investigations specifically into FLSA employee classification issues. Unlike McKenzie v. Renberg's Inc., 94 F.3d 1478, 1487 (10th Cir. 1996), there is evidence that Plaintiff's action *was* adverse to the Firm.

Defendant may contest the veracity of Plaintiff's recollection of Reaves' statements or argue that some other factor motivated Reaves' reaction, but the Court is not persuaded

26

that no reasonable jury could find that Plaintiff stepped outside her role. If a reasonable jury credits Plaintiff's recollection of her conversation with Reaves, the jury could find that Plaintiff was asserting the FLSA rights of other employees in "a position adverse to the employer." McKinnon, 814 F. App'x at 43.

### 2.    Pretext

Because Plaintiff has established a prima facie case, the burden shifts to Defendant to proffer a legitimate, non-retaliatory reason for the termination. See Adair, 452 F.3d at 489. As above, Defendant offers Plaintiff's alleged insubordination. This shifts the burden to Plaintiff to offer evidence of pretext. See id. The Parties' arguments on pretext for the FLSA and EPA claims are identical to their pretext arguments on Plaintiff's Title VII claim. (See ECF Nos. 33-1 at 14; 34 at 13-15.)

The analysis of pretext on the FLSA and EPA claims is the same as the discussion of pretext on the Title VII claim. See supra Part III.A.2. As analyzed above, because a reasonable jury could find that Defendant's proffered reasons for terminating Plaintiff are pretextual, Defendant's Motion for Summary Judgment on the FLSA and EPA claims must also be **DENIED**. See id.; EEOC v. Ford Motor Co., 782 F.3d at 760.

## VI.  Conclusion

Because a reasonable jury could find in Plaintiff's favor on her claims, Defendant's Motion for Summary Judgment (ECF No. 33) is **DENIED**.

SO ORDERED this _15th_ day of April, 2025.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE