UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ANDREA JAYE MOSBY,

    Plaintiff,

v.                                               Case No. 2:23-cv-02099-SHM-tmp

REAVES LAW FIRM PLLC,

    Defendant.

**PLAINTIFF'S MOTION FOR AWARD OF FRONT PAY,
LIQUIDATED DAMAGES AND PREJUDGMENT INTEREST**

Plaintiff Andrea Jaye Mosby submits this Motion for an Award of Front Pay, Liquidated Damages and Prejudgment Interest. In support, Plaintiff states as follows:[1]

## I. FACTS

Germane to this motion, as the Court is aware, Plaintiff Andrea Jaye Mosby prevailed at trial against Defendant on all three (3) her claims: Title VII retaliation, FLSA retaliation, and EPA retaliation. The jury awarded the Plaintiff $258,269.27 in back pay, compensatory damages in the amount of $516,538.54, and punitive damages in the amount of $2,500,00.00. (Docs. 54 and 60).

With respect to her wage losses, Plaintiff testified that she started looking for work almost immediately after she was terminated. (Doc. 64 at p. 85). She offered proof of voluminous job search efforts. (Doc. 64 at p. 85-87, Trial Exhibit 8). The jury rejected Defendant's argument that Plaintiff failed to mitigate her damages and found that she was entitled to a full award of back pay. Plaintiff further testified at trial that she started her new job on September 18, 2023. (Doc. 64 at

---

[1] Plaintiff intends to file a motion or attorney's fees under Rule 54 following the Court's entry of judgment as contemplated by Fed. R. Civ. P. 54(d).

p. 90). She testified (without any contrary proof offered by Defendant) that she has been making $192.31 less per week in her new job from her date of hire through present. (Doc. 64 at p. 90-91).

At trial, hostility between the parties was palpable. For example, in response to whether Mr. Reaves would have terminated Ms. Mosby's employment in hindsight, Mr. Reaves testified, "One hundred percent. Definitely. I definitely would have done it…And hindsight being 20/20, I would not have hired her in the first place." (Doc. 64 at 224).

Henry Reaves, CEO of Defendant Reaves Law Firm, was proud to testify to the Court and jury that his personal injury law firm has been very successful. Mr. Reaves, working with his wife Neva Reaves, testified that he grew the firm from one sole employee to nearly 100 employees by 2022. (Doc. 64 at p. 207-208). Henry Reaves and the Reaves Law Firm have received numerous community accolades and awards: the Ben F. Jones Bar recognized Mr. Reaves as humanitarian of the year; the Memphis Business Journal named Mr. Reaves executive of the year; Africa in April named Mr. Reaves international executive of the year; the Congress of Tennessee passed a special resolution for Mr. Reaves congratulating him for his charitable contributions; and numerous notable charitable contributions. (Doc. 64 at p. 210-211).

## II. LAW & ARGUMENT

### A. Plaintiff's Request For A Modest Award of Front Pay Should Be Granted

Plaintiff first seeks a modest award of front pay from the Court. As the Court is aware, front pay is an equitable remedy designed to fully compensate victims of employment discrimination for future lost wages and benefits when reinstatement is not feasible, as is true in this case. See Suggs v. ServiceMaster Educ. Food Mgmt., 72 F.3d 1228 (6th Cir. 1996) (where the court upheld a front pay award when reinstatement would have been "inappropriate due to hostility" between the parties). A district court has "flexibility and wide discretion" when

2

determining whether an award of front pay is appropriate. See West v. Tyson Foods, Inc., 374 F.App'x 624, 641 (6th Cir. 2010).

As an initial matter, an award of front pay is appropriate here in lieu of reinstatement given the hostility between the parties. Front pay and reinstatement are alternative remedies. Suggs, 72 F.3d at 1234. A prevailing employee may receive one but not both. Id. Front pay is appropriate "where the plaintiff has found other work, where reinstatement would require displacement of a non-culpable employee, or where hostility would result." Roush v. KFC Nat'l Mgmt. Co., 10 F.3d 392, 398-99 (6th Cir. 1993).

Here, front pay would be vastly superior to reinstatement. Plaintiff has been working in her new job in Atlanta since September 2023. Reinstatement would disrupt both her working life and Defendant's operations. Reinstatement would also likely require displacement of a non-culpable employee. Ms. Mosby performed a myriad of business and operations roles at the Reaves Law Firm. Reinstatement would require reassignment of those duties away from a non-culpable employee or employees. Last, reinstatement would result in undue hostility. As the Court is well aware, Mr. Reaves' anger with Ms. Mosby over her protected conduct in this case was extreme. It would not be possible to send Ms. Mosby back to work at the Reaves Law Firm without causing extreme hardship on all parties. And as the Court will see, Ms. Mosby is only seeking $30,000.36 in front pay. The unusually small request also favors granting front pay over reinstatement.

With respect to whether to award front pay, in Roush v. KFC Nat'l Mgmt. Co., 10 F.3d 392, 398-99 (6th Cir. 1993), the Sixth Circuit stated that front pay is a discretionary remedy and outlined a number of factors for determining its duration and amount, including: an employee's duty to mitigate, the availability of employment opportunities, the period within which one by

3

reasonable efforts may be re-employed, and the employee's work and life expectancy, among other things. Id. at 398-99.

Once the initial decision is made to award front pay over reinstatement, courts have wide discretion to determine the appropriate amount of front pay. Generally, in awarding front pay, the following factors are relevant: (1) the employee's future in the position from which she was terminated; (2) her work and life expectancy; (3) her obligation to mitigate her damages; (4) the availability of comparable employment opportunities and the time reasonably required to find substitute employment; (5) the discount tables to determine the present value of future damages; and (6) "other factors that are pertinent in prospective damage awards." See Fite v. First Tenn. Prod. Credit Corp., 861 F.2d 884, 893 (6th Cir. 1988) (quoting Shore I, 777 F.2d at 1160); see also Suggs v. ServiceMaster Educ. Food Management, 72 F.3d 1228, 1234 (6th Cir. 1996).

Here, all factors weigh in favor of the Court awarding front pay to the Plaintiff. First, reinstatement is not feasible as stated above. As evidenced by the testimony at trial, there is significant acrimony among the parties. In response to whether Mr. Reaves would have terminated Ms. Mosby's employment in hindsight, Mr. Reaves testified, "One hundred percent. Definitely. I definitely would have done it…And hindsight being 20/20, I would not have hired her in the first place." (Doc. 64 at 224).

Second, Plaintiff, who is age 51, mitigated her damages by diligently seeking alternative, comparable work. Ms. Mosby testified that she immediately started looking for work and that over the 15 months that followed her termination, she applied for over 100 jobs, utilizing various job recruiting services, until she eventually found comparable work in Atlanta. (Doc. 64 at p. 85-88).

4

Third, the evidence at trial established that Plaintiff found comparable employment, but she is making $192.31 less per week in her new job, approximately $10,000 less per year, as a result of Defendant's illegal actions. (Doc. 64 at p. 90-91).

Finally, regarding other factors the Court may consider, including Defendant's ability to pay an award of front pay, Mr. Reaves testified that the Defendant-firm was very successful and had grown immensely over the years. Thus, it is clear that a front pay award will not harm or hurt Defendant in any way.

Accordingly, in light of the above factors, Plaintiff seeks a modest award of three (3) years of front pay totaling $30,000.36 (3 years = 156 weeks x $192.31 per week = $30,000.36). No discount rate should be used by the Court given the short time period of the front pay award sought by Plaintiff.

### B. Plaintiff's Motion For An Award Of Liquidated Damages Should Be Granted

As the Court can see, under 29 U.S.C. § 216(b) of the FLSA, this Court may award any damages that will effectuate the purpose of the anti-retaliation provision of the statute, including liquidated damages doubling the jury's award:

> Any employer who violates the provisions of the section 215(a)(3) [the antiretaliation provision] of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation, employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. §216(b).

Federal courts recognize that a clear purpose of the FLSA's anti-retaliation provision is "to foster an environment in which employees are unfettered in their decision to voice grievances without fear of economic retaliation." Jackson v. Maple Dips, LLC, 2017 U.S. Dist. LEXIS 36561, at *1 (S.D. Ohio Mar. 14, 2017) (quoting Saffels v. Rice, 40 F.3d 1546, 1549 (8th Cir. 1994)). In

fact, federal courts have held that the FLSA's anti-retaliation provision was specifically enacted by Congress to remove the risk of employer retaliation against efforts by employees to secure their "just wage deserts under the Act." Dunlop v. Carriage Carpet Co., 548 F.2d 139, 145 (6th Cir. 1977) (quoting Mitchell v. DeMario Jewelry, 361 U.S. 288, 292 (1960)).

Thus, pursuant to the provisions of 29 U.S.C. § 216(b), federal courts recognize that liquidated damages to plaintiffs who prevail in FLSA retaliation actions are appropriate to effectuate the purposes of Section 215(a)(3). In such cases, awards of liquidated damages to prevailing employees in FLSA retaliation actions are routinely awarded in furtherance of the purpose of section 215(a)(3) of the FLSA.  Here, an award of liquidated damages furthers the FLSA's purpose by imposing additional costs on Defendant as a consequence of its retaliatory termination of Plaintiff based on her protected complaints.

For example, in Roe v. City of Murfreesboro, Judge Campbell of the Middle District of Tennessee granted a plaintiff-employee's motion for liquidated damages in an FLSA retaliation case, finding that liquidated damages were "appropriate in this case to both compensate Plaintiff for the delay in payment of his wages owed and the loss opportunities indicated above and also to provide incentive for employees of Defendant to report FLSA complaints and for Defendant not to retaliate." Roe v. City of Murfreesboro, TN, Case No. 3:14-cv-1395, Order Granting Plaintiff's Motion for Liquidated Damages or Prejudgment Interest, D.E. #97 (M.D. Tenn. Nov. 30, 2016) (Campbell, C.J.) (Attached as Exhibit A).  Further, Judge Campbell found that "the evidence at trial clearly demonstrated that employees with Defendant did not feel free to report FLSA grievances for fear of economic retaliation or reprisal." (Exh. A).  Judge Campbell's conclusion about the evidence was supported by the jury's strong award of back pay, front pay, and

compensatory damages, and the evidence at trial demonstrating the overall lack of an environment in which employees were able to voice grievances without repercussion. (Exh. A).

Based on the evidence at trial, Judge Campbell held that the plaintiff's protected acts furthered the purposes of the anti-retaliation provision and held that he was entitled to an award of liquidated damages, stating, "The Court does not consider these damages to be punitive, but rather, to be appropriate in light of the purposes of the anti-retaliation provision." (Exh A). In the end, Judge Campbell awarded the prevailing plaintiff liquidated damages in an amount equal to the back pay awarded by the jury. (Exh. A).

In another FLSA retaliation trial in which the plaintiff prevailed in the Middle District, Judge Crenshaw similarly awarded liquidated damages at the full amount of the back pay awarded by the jury. Bennett v. Highland Graphics, Inc., et al, Case No. 3:14-cv-02408, Memorandum Opinion and Order, D.E. #298 (M.D. Tenn. Oct. 10, 2017) (Crenshaw, J.) (Attached as Exhibit B).

In light of Roe and Bennett, it appears to be a strong precedent that, at a minimum, a plaintiff who prevails in an FLSA retaliation action is entitled to an award of liquidated damages at the full amount of back pay awarded by the jury. See, Roe and Bennett. But, as recognized by the Court in Roe, "the Court may award such liquidated damages as it deems appropriate, *without limitation*, as stated in the statute." (Exh. X at p. 3). Indeed, the statutory language, "including without limitation," demonstrates that the Court may award *any* legal or equitable relief it deems appropriate. See Moore v. Freeman, 355 F.3d 558, 563 (6th Cir. 2004) (the FLSA anti-retaliation provision "allows any legal or equitable relief that is appropriate" and does not limit the type of damages that are available). Thus, within its discretion, this Court can certainly award liquidated damages at an amount "equal to the total verdict rendered by the jury." (Exh. A at p. 3).

7

In this case, the proof presented at trial demonstrates that Plaintiff should be awarded liquidated damages from Defendant. This was an egregious case of retaliation as evidenced by the jury's finding for Plaintiff on all counts, as well as the amount of the damages awarded. Mr. Reaves showed no remorse for his actions, stating that he would terminate Plaintiff again: "And I fired her, and I stand on it, and I would fire her again today if I could fire her again today." (Doc. 63 at p. 224). He referred to the lawsuit as "frivolous" (Doc. 64 at p. 9) and falsely and maliciously accused Plaintiff's counsel and Plaintiff of trying to "attack" him and his firm. (Doc. 64 at 9).

Mr. Reaves, who is a practicing attorney and member of the bar, showed complete disdain for the judicial process and his potential liability and was admonished by the Court numerous times to answer questions while testifying. (Doc. 64 at p. 9, 11, 12, 17, 18, and 23). Further, Mr. Reaves falsely and unethically accused Plaintiff's counsel of lying numerous times. He testified, "Because if [the jury] believe[s] me, then you and your client are lying." (Doc. 63 at p. 199). Most egregiously, he questioned the integrity of Plaintiff's counsel in a line of questioning regarding a properly admitted exhibit: "But the purpose of that document, how you're trying to use it with the jury is being dishonest...You're being dishonest with the jury." (Doc. 64 at 28-29). In short, Mr. Reaves's actions clearly show his attitude towards employees who report concerns under the FLSA. At the conclusion of his testimony, Mr. Reaves—doubling down on his position and confirming his belief that he did nothing wrong—testified: "It is illegal to retaliate. And if the jury feels that I retaliated, I want them to give every single dime that you ask them to give. If they think that I fired her because of that, I want the jury to give you $10 million." (Doc. 64 at p. 226-227).

Plaintiff respectfully contends that if there ever was a retaliation case where liquidated damages were appropriate, this is it. The type of behavior engaged by Defendant in this action is

8

exactly what the law was designed to prevent and deter. Sadly, the only thing that will get Defendant's attention is an award that affects him financially such as an award of liquidated damages.

Accordingly, Plaintiff moves this Court for a liquidated damages award doubling the entire economic and non-economic damages award of $258,269.27 for back pay; $30,000.36 for front pay, and $516,538.54 compensatory damages, which equates to a liquidated damages award of $804,808.17. Alternatively, at a minimum, Plaintiff respectfully requests an award of liquidated damages doubling the back pay and front pay awards, which would be $288,269.63.

### C. Plaintiff's Motion For An Award Of Prejudgment Interest Should Be Granted

Finally, Plaintiff also requests that the Court enter a judgment reflecting an award of prejudgment interest because Plaintiff is the prevailing party in this case. Or, if the Court denies Plaintiff's request for an award of liquidated damages for any reason, Plaintiff requests that the Court award prejudgment interest.

"An award of prejudgment interest ... is an element of complete compensation in a Title VII back pay award" because it "helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred." EEOC v. Wilson Metal Casket Co., 24 F.3d 836, 841–42 (6th Cir. 1994). Courts typically award prejudgment interest on an award of back pay. See, e.g., EEOC v. Kentucky State Police Dep't, 80 F.3d 1086, 1098 (6th Cir. 1996) ("Indeed, it is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award."); Wilson Metal Casket Co., 24 F.3d at 842 ("This court commonly awards prejudgment interest on back pay awards.").

"While district courts may fashion an award [of prejudgment interest] in their sound discretion, such an award must consider the case-specific factors such as, but not limited to: the

9

remedial goal to place the plaintiff in the position that he or she would have occupied prior to the wrongdoing; the prevention of unjust enrichment on behalf of the wrongdoer; the lost interest value of money wrongly withheld; and the rate of inflation." Schumacher v. AK Steel Corp. Retirement Accumulation Pension Plan, 711 F.3d 675, 687 (6th Cir. 2013). "A proper determination of pre-judgment interest involves a consideration of various case-specific factors and competing interests to achieve a just result. While we have upheld awards of pre-judgment interest calculated pursuant to 28 U.S.C. §1961, a mechanical application of the rate at the time of the award amounts to an abuse of discretion." Schumacher, 711 F.3d at 686.

In a typical employment discrimination case, the period for assessing prejudgment interest begins with the date of the plaintiff's termination and ends on the entry date of the judgment. Lankford v. Reladyne, LLC, 2016 WL 3640691, at *9 (S.D. Ohio June 29, 2016). The federal interest statute, 28 U.S.C. §1961(a), states that the interest rate should be calculated using the weekly average interest rate one week prior to entry of the judgment. Bell v. Prefix, Inc., 2010 WL 4260081, at *2 (E.D. Mich. Oct. 22, 2010).

Here, interest rates are alternatively assumed to be equal to annual rates of 3.91% or 10.00%. See Meoli v. Huntington National Bank, 848 F.3d 716, 735 (6th Cir. 2017). Specifically, the rate is equal to the "weekly average 1-year constant Treasury yield," as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." See Exhibit C, Report of Ralph Scott, Ph.D. According to the U.S. Dept. of the Treasury, that rate is 3.91%. Tenn. Code. Ann. § 47-14-123 calculates prejudgment interest at a rate of 10.00%. See Exh. C at p. 3-10, Calculation of Prejudgment Interest; Exh. D, historical data for 1-year constant Treasury yield.

According to the U.S. Department of the Treasury, the Sixth Circuit has confirmed that back pay should ordinarily include compound interest, rather than simple interest. "Back pay is awarded to make the claimant whole, and such relief 'can only be achieved if [prejudgment] interest is compounded.'" Kentucky State Police Dep't, 80 F.3d at 1098 (quoting Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir.1993)). District courts within the Eastern District of Tennessee have used compound interest when calculating prejudgment interest in Title VII cases. See, e.g., Herring v. SCI Tennessee Funeral Servs., LLC, 2018 WL 4869166, at *2 (E.D. Tenn. Apr. 2, 2018) ("award of prejudgment interest at a rate of 5%, calculated using the compound interest method, is fair to fully compensate Andrea Herring for the loss of the use of backpay to which she is legally entitled"); Pittington v. Great Smoky Mountain Lumberjack Feud, LLC, 2017 WL 1393718, at *3 (E.D. Tenn. Apr. 18, 2017), rev'd and vacated, 880 F.3d 791 (6th Cir. 2018) (compound interest upheld, but the Sixth Circuit found that the district court should have used a higher interest rate).

Should the Court deny Plaintiff's request for liquidated damages, under Sixth Circuit Law, Plaintiff must be awarded prejudgment interest if liquidated damages are not awarded. See Cowan v. Treetop Enterprises, Inc., 163 F.Supp. 2d 930, 943 (M.D. Tenn. 2001) (citing McClanahan v. Matthews, 440 F.2d 320, 326 (6th Cir. 1971)). In this instance, Plaintiff believes liquidated damages are appropriate and should be awarded in this case, but if they are not, she requests an award of prejudgment interest on the jury's backpay award in an amount deemed appropriate by the Court.

In this case, the jury awarded backpay damages in the amount of $258,269.27, which represented 15 months Plaintiff was unemployed from June 2022 through September 2023. Plaintiff's date of termination was June 2, 2022. The Court entered its Order on Jury Verdict on

11

May 8, 2025. (Doc. 60). "Prejudgment interest ordinarily should apply to each year an employee lost the use of his/her wages." Kentucky State Police Dept., 80 F.3d at 1099. Thus, the appropriate formula would allocate Plaintiff's $258,269.27 backpay award evenly throughout the approximately fifteen-month period between termination and judgment, utilizing a compound interest rate of 10% per annum. The total value of prejudgment interest on a $258,269.27 back pay award at a compound interest rate of 10% over a period of 153 weeks would be $63,460.78. (See Exh. 3 at p. 7-10, Table 2).

The Court should also grant Plaintiff's request for prejudgment interest on her emotional distress damages from the date of termination through the Court's entry of the Order on Jury Verdict. "[P]rejudgment interest should apply to all past injuries, including past emotional injuries" compensated through compensatory damages awards. Flynn v. Trumbull Cty., 2007 U.S. Dist. LEXIS 11581, at *5-6 (N.D. Ohio Feb. 20, 2007). See Yerkes v. Ohio State Highwy Patrol, 2024 U.S. Dist. LEXIS 217755, at *50-52 (S.D. Ohio Dec. 2, 2024) (awarding prejudgment interest on plaintiff's award of back pay **and** compensatory damages, finding that compensatory, non-economic damages are just as much of an actual loss as purely economic damages).

In Meachem v. Memphis Light, Gas & Water Division, this Court held that the plaintiff-employee was entitled to prejudgment interest on both her economic damages **and** emotional distress damages. See Exhibit E, Meachem v. Memphis Light, Gas & Water Division, Case No. 2:14-cv-02156-JTF-dkv, Order on Motions, D.E. #112 (W.D. Tenn. March 29, 2017) (Fowlkes, J.). In support of the order in Meachem, this Court explained "[p]rejudgment interest should apply to all past injuries, including past emotional injuries. Courts should award prejudgment interest whenever a certain sum is involved. Refusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole." Exh. E at p. 20 (citations omitted). Moreover,

12

"[n]on-economic damages awarded for a plaintiff's pain and suffering are 'just as much an 'actual loss' (for which prejudgment interest is in order)' as purely economic damages." Id. at p. 21. See also, Barnard v. Theobald, 721 F.3d 1069, 1078 (9th Cir. 2013) (prejudgment interest may be awarded on both economic and non-economic damages); Arnold v. Pfizer, Inc., 2015 U.S. Dist. LEXIS 33216, *8 (D. Ore. Mar. 18, 2015) (awarding prejudgment interest on compensatory damage award in ADA case from the date of the verdict).

In this case, Plaintiff testified regarding the significant emotional distress she suffered following her termination, and in turn, the jury believed her and awarded her $516,538.54 in compensatory damages for non-economic harm. "Prejudgment interest should apply to all past injuries, including past emotional injuries. Courts should award prejudgment interest whenever a certain sum is involved. Refusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole." See Exh. E at 20-21; Thomas v Tex. Dep't of Crim. Justice, 297 F.3d 361, 372 (5th Cir. 2002) (citing United States v. Batson, 782 F.2d 1307, 1316)). Emotional distress has been characterized as an "actual loss" for which prejudgment interest is available. Barnard, 721 F.3d at 1078.

Accordingly, Plaintiff maintains that her entitlement to the emotional distress damages became due immediately following the date of her termination and that therefore, prejudgment interest is appropriate from her termination through the Court's Order on Jury Verdict. The total value of prejudgment interest on a $516,538.54 emotional distress damages at a compound interest rate of 10% over 153 weeks would be $83,360.21. (Exh. C at p. 3-6).

In summary, based on the law and facts above, Plaintiff is entitled to an award of prejudgment interest. Plaintiff contends that the Court should apply the rate of 10% per annum to Plaintiff's backpay and emotional distress damages awards of $258,269.27 and $516,538.54,

13

compounded over a period of 153 weeks.  Utilizing that formula, Plaintiff submits that her total prejudgment interest awards should be $63,460.78 and $83,360.21 for a total prejudgment interest award of $146,820.99.  The Court should therefore enter the judgment accordingly to reflect prejudgment interest awarded.

### III. CONCLUSION

Based on the foregoing reasons, the Court should grant Plaintiff's motion for front pay, liquidated damages, and prejudgment interest as argued and supported above.

Respectfully submitted,

/s/ William B. Ryan
William B. Ryan - TN Bar #020269
Janelle C. Osowski – TN Bar #31359
DONATI LAW, PLLC
1545 Union Avenue
Memphis, TN 38104
Telephone: 901/278-1004
Fax: 901/278-3111
Email:  billy@donatilaw.com
        janelle@donatilaw.com


ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document has been served via the Court's ECF system on counsel for Defendant, Jonathan C. Hancock, Dean Shauger, and Mary Katherine Smith, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 165 Madison Ave., Ste. 2000, Memphis, TN 38103, on June 9, 2025.

/s/ William B. Ryan