IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **ANDREA JAYE MOSBY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:23-cv-02099-SHM-tmp |
| ) | |
| **REAVES LAW FIRM, PLLC,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER AWARDING FRONT PAY, LIQUIDATED DAMAGES, AND PREJUDGMENT INTEREST AND DENYING DEFENDANT'S MOTION FOR RELIEF FROM THE ORDER ON JURY VERDICT**

Before the Court are Plaintiff's Motion for an Award of Front Pay, Liquidated Damages, and Prejudgment Interest (ECF No. 66) and Defendant's Motion for Relief from a Judgment or Order pursuant to Federal Rule of Civil Procedure 60 (ECF No. 72), which seeks relief from the Court's Order on Jury Verdict. For the reasons that follow, Plaintiff's Motion is **GRANTED** and Defendant's Motion for Relief from a Judgment or Order is **DENIED**.

I. **Background**

On May 5, 2025, this case came before the Court for trial by jury. (ECF No. 60.) On May 7, 2025, the jury announced a verdict in favor of Plaintiff Andrea Jaye Mosby and against Defendant Reaves Law Firm, PLLC on each of Plaintiff's three claims of retaliation in violation of Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e-3(a), the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the Equal Pay Act ("EPA"), 29 U.S.C. § 206. (Id.) The jury awarded Plaintiff Andrea Jaye Mosby $258,269.27 as and for back pay, $516,538.54 as and for compensatory damages, and $2,500,000.00 as and for punitive damages. (Id.)

On May 8, 2025, the Court entered the Order on Jury Verdict. (Id.) The Order provided greater detail and announced that a telephonic scheduling conference would be set to discuss post-trial matters. (See id.) On May 14, 2025, the Court held a status conference with trial counsel for the parties and set a schedule for post-trial motions. (ECF No. 62.)

Defendant was represented at trial by Jonathan C. Hancock and Dean J. Shauger of Baker, Donelson, Bearman, Caldwell, & Berkowitz, P.C. (ECF No. 60.) On June 20, 2025, Hancock and Shauger filed a motion to withdraw as counsel for Defendant after Defendant filed a professional negligence action against them in this District based on their alleged conduct in this case. (See ECF No. 67.) On June 27, 2025, new counsel filed a notice of appearance for Defendant. (ECF No. 71.)

On June 9, 2025, Plaintiff filed her Motion for an Award of Front Pay, Liquidated Damages, and Prejudgment Interest. (ECF No. 66.) Defendant responded in opposition on June 27, 2025. (ECF No.

2

73.) Plaintiff replied on July 10, 2025. (ECF No. 75.) Because Plaintiff seeks additional damages, judgment has not been entered.

On June 27, 2025, Defendant filed a Motion for Relief from the Court's Order on Jury Verdict pursuant to Federal Rule of Civil Procedure 60(b). (ECF No. 72.) Plaintiff responded in opposition on July 10, 2025. (ECF No. 74.)

**II. Law and Analysis**

Plaintiff seeks awards of front pay, liquidated damages, and prejudgment interest on her awards of back pay and compensatory damages. (See ECF No. 66.) Defendant argues as a threshold matter that Plaintiff's motion is not ripe because of Defendant's Rule 60 Motion, which Defendant filed after Plaintiff's motion for additional damages. (See ECF Nos. 72, 73.) For the reasons explained below, Defendant's Rule 60 motion is without merit. See infra Part II.D. Defendant also opposes Plaintiff's three requested awards on the merits. (See ECF No. 73.)

**A. Front Pay**

An award of front pay in a Title VII suit is an equitable remedy committed to the discretion of trial courts, awarded "only when the preferred remedy of reinstatement...is not appropriate or feasible." See Schwartz v. Gregori, 45 F.3d 1017, 1023 (6th Cir. 1995); Shore v. Federal Express Corp., 42 F.3d 373 (6th Cir. 1994). Plaintiffs have a duty to mitigate an award of front pay. Suggs v.

3

ServiceMaster Educ. Food Mgmt., 72 F.3d 1228, 1234 (6th Cir. 1996). In awarding front pay, courts consider:

> (1) the employee's future in the position from which she was terminated; (2) her work and life expectancy; (3) her obligation to mitigate her damages; (4) the availability of comparable employment opportunities and the time reasonably required to find substitute employment; (5) the discount tables to determine the present value of future damages; and (6) "other factors that are pertinent in prospective damage awards."

Suggs, 72 F.3d at 1234 (quoting Fite v. First Tenn. Prod. Credit Ass'n, 861 F.2d 884, 893 (6th Cir. 1988)).

Plaintiff argues that reinstatement would be inappropriate given the hostility between the parties and seeks an award of front pay in the amount of $30,000.36, which would compensate her for three years of lower pay in her new job, without interest. (See ECF No. 66 at 2-5.) Defendant objects, arguing that there was: "no documentation entered into evidence proving that Plaintiff was actually making less per week in her new job"; "no documentation entered into evidence showing that Plaintiff attempted to mitigate her damages in seeking alternative, comparable work"; and "no evidence presented that conclusively demonstrated that comparable employment opportunities were unavailable." (ECF No. 73 at 1-2.)

The Court concludes without difficulty that reinstatement would be inappropriate in this case. See Schwartz, 45 F.3d at 1023. The hostility between the parties was apparent to all present at

4

trial. To contest a front pay award, Defendant appears to rely on the third and fourth Suggs factors. See Suggs, 72 F.3d at 1234. (See ECF No. 73 at 1-2.)

In response, Plaintiff cites her trial testimony about her efforts to secure comparable employment after she was fired and trial exhibit 8, roughly 50 pages documenting her job application process. (See ECF No. 66 at 4-5.) Plaintiff testified that she applied for more than 100 jobs over the 15 months following her termination, eventually accepting another job although it meant moving from Memphis to Atlanta and creating a child custody dispute. (See ECF Nos. 64 at 85-89.) Plaintiff's testimony included a discussion of her work experience and the job market that explained why finding a comparable job was difficult. (Id.) Plaintiff also testified that her current job pays her $192.31 a week less than she made while working for Defendant. (Id. at 90-91.)

The trial evidence Plaintiff cites adequately rebuts Defendant's contentions. Although documentation such as paystubs was not entered into evidence, Plaintiff testified to the penny about how much less a week she makes at her new job. (Id.) Contrary to Defendant's contentions, Plaintiff entered evidence at trial that showed her mitigation efforts and supplemented those records with testimony explaining the length of time and number of

5

rejections she received before she was able to secure comparable employment. (Id. at 85-91.)

Plaintiff seeks front pay, not for the remainder of her anticipated working years, but for three years. It is not unreasonable to expect that it may take three years for Plaintiff to obtain a roughly $10,000.00 a year raise, which would make her new salary comparable to what she earned in Defendant's employ.

Considering the factors outlined in Suggs, the trial record, and the parties' briefs, Plaintiff is **AWARDED** $30,000.36 as and for front pay.

B.  **Liquidated Damages**

Pursuant to 29 U.S.C. § 216(b) of the FLSA, an employer that violates the act's retaliation provision is liable "for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) or 218d of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages."

Although liquidated damages are "the norm" in FLSA wage and hour cases, Solis v. Min Fang Yang, 345 F. App'x 35, 38 (6th Cir. 2009) (quoting Martin v. Ind. Mich. Power Co., 381 F.3d 574, 585 (6th Cir. 2004)), liquidated damages in FLSA retaliation cases are awarded only when "appropriate to effectuate the purposes" of the FLSA retaliation provision. See Blanton v. City of Murfreesboro,

856 F.2d 731, 737 (6th Cir. 1988). The purpose, "generally speaking, is 'to foster an environment in which employees are unfettered in their decision to voice grievances without fear of economic retaliation.'" Hanson v. McBride, 337 F.R.D. 139, 146 (M.D. Tenn. 2020) (quoting Jackson v. Maple Dips, LLC, No. 3:16-CV-296, 2017 WL 991701, at *1 (S.D. Ohio Mar. 14, 2017) and Saffels v. Rice, 40 F.3d 1546, 1549 (8th Cir. 1994)); see also Moore v. Freeman, 355 F.3d 558, 563 (6th Cir. 2004) (One purpose is "to ensure that employees feel free to report grievances under the FLSA.").

Plaintiff seeks liquidated damages doubling her awards of back pay, front pay, and non-economic compensatory damages, for a total liquidated damages award of $804,808.17. Defendant argues that it did not maintain an environment in which employees "did not feel free to report FLSA grievances for fear of economic retaliation or reprisal." (ECF No. 73 at 2 (quoting Roe v. City of Murfreesboro, No. 314-cv-1395, ECF No. 97 at 2 (M.D. Tenn. Nov. 30, 2016)).) Plaintiff argues that Defendant's position is incompatible with the jury verdict, which not only found Defendant liable for violating the retaliation provisions of both the FLSA and EPA, but also found by a preponderance of the evidence that Defendant acted with malice or reckless indifference toward the Plaintiff's federally protected rights by awarding punitive damages. (See ECF No. 75 at 2.)

The testimony at trial, credited by the jury in reaching its verdict, demonstrated that there was an atmosphere at Reaves Law Firm in which raising complaints or challenging the decisions of CEO Henry Reaves was met with hostility. In this case, testimony supports the conclusion that, after Plaintiff raised complaints about equal pay and wage classification, her loyalty to Defendant was questioned, she was demoted from the c-suite to intake clerk, and she was fired on pretextual grounds days later. (See ECF No. 64 at 58–83.)

The testimony also shows that Defendant's leadership has no remorse for Defendant's violations of federal anti-retaliation law. CEO Henry Reaves testified, "I fired her, and I stand on it, and I would fire her again today if I could fire her again today." (ECF No. 63 at 224.) He called Plaintiff's case a "frivolous lawsuit" and maligned Plaintiff as "a liar and a manipulator" for the accusations she made in bringing her retaliation claims. (ECF No. 64 at 9, 22.)

Plaintiff is correct that the jury's verdict is incompatible with Defendant's contention that the atmosphere at Reaves Law Firm was one in which employees felt free to make complaints about potential labor law violations.

Perhaps the only reason a discretionary award of liquidated damages on all or part of the jury's damages awards might be inappropriate is the fact that the jury has already awarded

8

Plaintiff $2,500,000.00 in punitive damages. However, the purposes of the two types of damages are not the same. Punitive damages do not compensate the victim for harm, they punish the wrongdoer and deter others from committing similar wrongs in the future. See, e.g., Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 432 (2001). Liquidated damages "are compensation, not a penalty or punishment." Elwell v. Univ. Hosps. Home Care Servs., 276 F.3d 832, 840 (6th Cir. 2002) (quoting McClanahan v. Mathews, 440 F.2d 320, 322 (6th Cir. 1971)); see also Roe, No. 314-cv-1395, ECF No. 97 at 2 ("liquidated damages are not rendered punitive merely because they have an incidental deterrent effect.").

In this case, liquidated damages are appropriate in the amount of Plaintiff's back pay award: $258,269.27. Because Plaintiff was unlawfully fired in retaliation for making complaints under the FLSA, she was left without income for a period of 15 months. Being deprived of a paycheck for such a long time has serious financial consequences for wrongfully terminated employees.

Liquidated damages are often necessary to compensate Plaintiffs in FLSA cases because an award of back pay plus modest statutory prejudgment interest does not fully compensate a person for the financial damage caused by unpaid wages. Cf. Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945) (Because of the economic damage done by failure to pay wages owed under the FLSA, "double payment must be made in the event of delay in order to insure

9

restoration of the worker to that minimum standard of well-being.").

In this case, an award of liquidated damages on Plaintiff's award of back pay will further the purposes of the FLSA, serving "to compensate Plaintiff for the delay in payment" of her salary and for "lost opportunities", as well as "provide incentive for employees of Defendant to report FLSA complaints and for Defendant not to retaliate." Roe, No. 314-cv-1395, ECF No. 97 at 2. Pursuant to § 216(b) of the FLSA, Plaintiff is **AWARDED** $258,269.27 in liquidated damages, equal to the amount of her back pay award.

Awarding liquidated damages on Plaintiff's front pay and non-economic compensatory damages award would not serve the same compensatory purpose for lost economic opportunity. The arguments in favor of doubling those awards to further the purposes of the FLSA carry less weight when considered in the context of the jury's $2,500,000.00 punitive damages award. Many of Plaintiff's arguments revolve around the issue of deterrence. Had punitive damages not been sought or awarded in this case, liquidated damages on Plaintiff's compensatory damages and front pay awards might have sufficiently furthered the purposes of the act. On this record, they do not.

### C. Prejudgment Interest

Prejudgment interest on back pay is awarded as a matter of course "to make victims of discrimination whole." E.E.O.C. v.

10

Wilson Metal Casket Co., 24 F.3d 836, 842 (6th Cir. 1994). However, a Plaintiff cannot recover both liquidated damages and prejudgment interest on a back pay award under the FLSA. See Elwell, 276 F.3d at 841.

Courts have also awarded prejudgment interest for non-economic compensatory damages, such as damages for emotional distress, because they "are just as much an actual loss (for which pre-judgment interest is in order) as purely economic damages." Yerkes v. Ohio State Highway Patrol, No. 2:19-CV-2047, 2024 WL 4929293, at *17 (S.D. Ohio Dec. 2, 2024), appeal dismissed, No. 25-3002, 2025 WL 992614 (6th Cir. Mar. 19, 2025) (quoting Barnard v. Theobald, 721 F.3d 1069, 1078 (9th Cir. 2013)) (internal quotations removed). See also Meachem v. Memphis Light, Gas & Water Div., No. 2:14-CV-02156-JTF-dkv, 2017 WL 11681788, at *10 (W.D. Tenn. Mar. 29, 2017), aff'd sub nom. Mosby-Meachem v. Memphis Light, Gas & Water Div., 883 F.3d 595 (6th Cir. 2018); Flynn v. Trumbull Cnty., Ohio, No. 4:02-CV-773, 2007 WL 582323, at *2 (N.D. Ohio Feb. 20, 2007) (citing Thomas v. Tex. Dep't of Crim. Justice, 297 F.3d 361, 372 (5th Cir. 2002)).

In awarding prejudgment interest, pursuant to 28 U.S.C. § 1961, courts use the rate "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment" and generally compounded

11

annually. Umfress v. City of Memphis, No. 2:17-cv-02568-SHL-tmp, 2020 WL 12969188, at *2 (W.D. Tenn. Oct. 19, 2020). The average 1-year constant maturity Treasury yield for the week ending August 15, 2025, is 3.91 percent.[1]

Plaintiff seeks an award of prejudgment interest on her jury awards of back pay in the amount of $258,269.27 and compensatory emotional distress damages in the amount of $516,538.54. (See ECF Nos. 60, 66.) Because the Court is awarding liquidated damages in the amount of her back pay award, Plaintiff will not also receive prejudgment interest on that award. See Elwell, 276 F.3d at 841. Defendant objects only on the basis that Plaintiff's request is "excessive and not supported by the facts." (ECF No. 73.) Defendant's objection is unpersuasive. Awards of prejudgment interest on emotional distress damages are appropriate because they "are just as much an actual loss (for which pre-judgment interest is in order) as purely economic damages." Yerkes, 2024 WL 4929293, at *17.

Plaintiff is awarded prejudgment interest at a rate of 3.91 percent on her award of compensatory damages from the date of her termination, June 2, 2022, to the present. Plaintiff is **AWARDED**

---

[1] See Market Yield on U.S. Treasury Securities at 1-Year Constant Maturity, Quoted on an Investment Basis (WGS1YR), Fed. Rsrv. Bank of St. Louis FRED, https://fred.stlouisfed.org/series/WGS1YR (last visited August 20, 2025).

12

$68,018.48 in prejudgment interest on her award of compensatory damages.[2]

### D. Defendant's Rule 60 Motion

Federal Rule of Civil Procedure 60 permits a party to seek relief from a final judgment or order of a court, "circumscribed by public policy favoring finality of judgments and termination of litigation." Waifersong Ltd., Inc. v. Classic Music Vending, 976 F.2d 290, 292 (6th Cir. 1992). Defendant relies on Rule 60 subsections (b)(3) and (b)(6) to support its motion. (See ECF No. 72-1 at 2.) Both are unavailing.

#### 1. Relief Under Rule 60(b)(3)

Rule 60(b)(3) permits relief when there has been "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Relief under 60(b)(3) "clearly requires the moving party to 'show that the adverse party committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding [in] question.'" Info-Hold, Inc. v. Sound Merch., Inc., 538 F.3d 448,

---

[2]

| Dates | Days | Principal | Interest |
|---|---|---|---|
| 6/2/2022 - 6/1/2023 | 365 | $516,538.54 | $20,196.66 |
| 6/2/2023 - 6/1/2024 | 365 | $536,735.20 | $20,986.35 |
| 6/2/2024 - 6/1/2025 | 365 | $557,721.54 | $21,806.91 |
| 6/2/2025 - 8/21/2025 | 81 | $579,528.46 | $5,028.56 |
| Total Prejudgment Interest | | | $68,018.48 |

455 (6th Cir. 2008) (quoting Jordan v. Paccar, Inc., 1996 WL 528950, at *6, (6th Cir. 1996)). A party alleging fraud must show "the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment." Info-Hold, Inc., 538 F.3d at 455. The movant must prove fraud by clear and convincing evidence. Id. at 454.

Defendant first raises Plaintiff's counsel's remark during Plaintiff's closing argument about Defendant's CEO, Henry Reaves, being "the dumbest lawyer in America to retaliate against her." (ECF Nos. 65 at 26, 61; 72-1 at 3-4.) Defendant contends that this argument, combined with the fact that Defendant's counsel did not object, was "highly prejudicial" and prevented Defendant from "fully and fairly litigating their case." (ECF No. 72-1 at 3-4 (citing RDI of Michigan, LLC v. Michigan Coin-Op Vending, Inc, No. 08-11177, 2011 WL 3862347, at *6 (E.D. Mich. Sept. 1, 2011)).)

As Plaintiff notes, Plaintiff's counsel's remark about Reaves was a direct quotation from Reaves, who testified at trial that "an attorney who would illegally fire a labor law employment attorney who has 25 years of litigating for an illegal reason, I think that would be the dumbest lawyer in America. I think that would be the dumbest lawyer in America." (ECF Nos. 63 at 223; 74 at 3.) Reaves then asked Plaintiff's counsel to call him "dumb", saying: "Hey, hey, say it. I'm dumb, ain't I?" (ECF No. 63 at 223.)

14

In Plaintiff's closing argument, Plaintiff's counsel raised this line of questioning and twice said that "He [Reaves] is not the dumbest lawyer in America." (ECF No. 65 at 26, 61.)

Plaintiff's counsel's repeating Defendant's CEO's testimony and saying that "He is not the dumbest lawyer in America" does not constitute fraud or misconduct. To the extent Defendant's contention relies on the failure of its own trial counsel to object, its contention is unavailing under 60(b)(3) because the misconduct alleged must be "by an opposing party." Fed. R. Civ. P. 60(b)(3).

Defendant next contends that Plaintiff's counsel told Defendant's trial counsel: "We've made a lot of money together and we'll make a lot more." (ECF No. 72-1 at 4.) Defendant offers that Reaves will swear under penalty of perjury that such a statement was made, but does not attach as an exhibit a sworn declaration of this alleged off-the-record statement. Defendant argues that this comment's "tone and familiarity...undermined adversarial posture of the proceedings and...adversely impacted the fairness of the trial." (Id.)

This contention is also unavailing. Even if true, the comment alone would not constitute misconduct by an opposing party within the meaning of Rule 60(b)(3). It would also fail to satisfy the clear and convincing standard, *inter alia*, because there is no evidence to support it.

15

### 2. Relief Under Rule 60(b)(6)

Rule 60(b)(6) permits relief when there is "any other reason that justifies relief." Relief is available under 60(b)(6) "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir. 1990). A movant must raise "something more," which "must include unusual and extreme situations where principles of equity *mandate* relief." Id.

Defendant seeks relief from the Court's Order on Jury Verdict, filed May 8, 2025. (ECF Nos. 60; 72-1 at 6.) Defendant appears to seek relief from that Order because Defendant is under the impression that its trial counsel missed the deadline to file a Rule 59 motion for a new trial and other post-trial motions. (See ECF No. 72-1 at 6-7.) Defendant is mistaken. Rule 59(b) plainly states that a "motion for a new trial must be filed no later than 28 days after the entry of judgment." Judgment in this case has not been entered.

Regardless, an allegation of legal malpractice by trial counsel is not one of the "extreme situations where principles of equity *mandate* relief" under Rule 60(b)(6). See Olle, 910 F.2d 365; Moore v. United States, No. CV 14-114-DLB-HAI, 2018 WL 5046065, at *2 (E.D. Ky. Oct. 17, 2018); McCurry ex rel. Turner v. Adventist Health Sys., 298 F.3d 586, 593 (6th Cir. 2002).

### III. Conclusion

For good case shown, Plaintiff's Motion for Award of Front Pay, Liquidated Damages, and Prejudgment Interest (ECF No. 66.) is **GRANTED**. In addition to the jury's verdict, Plaintiff is **AWARDED** $30,000.36 in front pay, $258,269.27 in liquidated damages, and $68,018.48 in prejudgment interest.

Because Defendant fails to show it is entitled to relief under Rule 60, Defendant's Motion for Relief from a Judgment or Order (ECF No. 72) is **DENIED.**

SO ORDERED this  *21st*  day of August, 2025.

                              /s/ *Samuel H. Mays, Jr.*
                              _____
                              SAMUEL H. MAYS, JR.
                              UNITED STATES DISTRICT JUDGE